# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| CITY OF DOVER, a municipal corporation of the State of Delaware and ROBBINS HOSE COMPANY, NO. 1, INC., | ) ) ) ) ) | |
| Petitioners, | ) ) | |
| v. | ) ) | C.A. No. K25A-05-002 NEP |
| STATE OF DELAWARE FIRE PREVENTION COMMISSION, consisting of RONALD MARVEL, WILLIAM KELLY, LYNN TRUITT, J. DAVID MAJEWSKI SR., JOE LEONETTI SR., RONALD O'NEIL, and JEFFREY EISENBREY; CHESWOLD FIRE COMPANY; and CAMDEN-WYOMING FIRE COMPANY, | ) ) ) ) ) ) ) ) ) ) ) | |
| Respondents. | ) | |

Submitted: April 14, 2026
Decided: July 2, 2026

## MEMORANDUM OPINION AND ORDER

*Upon Consideration of Petitioners' Petition for Writ of Certiorari*

**GRANTED**

Daniel A. Griffith, Esquire, Whiteford, Taylor & Preston LLC, Wilmington, Delaware, *Attorney for Petitioners*.

Nicole S. Hartman, Esquire, Deputy Attorney General, Delaware Department of Justice, Dover, Delaware, *Attorney for Respondent State of Delaware Fire Prevention Commission*.

Elio Battista, Jr., Esquire, Parkowski Guerke & Swayze, P.A., Wilmington, Delaware, *Attorney for Respondents Cheswold Fire Company and Camden-Wyoming Fire Company*.

**Primos, J.**

Before this Court is the Petition for Writ of Certiorari filed by the City of Dover (the "City") and Robbins Hose Company No. 1, Inc. ("Robbins Hose") (collectively, "Petitioners"), seeking review of the decision of the State of Delaware Fire Prevention Commission (the "Commission"). The Commission denied Petitioners' requests to alter fire district boundaries for properties annexed into the City and left those areas within the fire districts of Cheswold Fire Company and Camden-Wyoming Fire Company.

This matter presents a narrow legal question: whether the Commission may refuse to conform fire district boundaries to municipal boundaries after annexation. The Court concludes that it may not. As a matter of law, the City has authority to provide routine fire services within its municipal boundaries. The Commission's boundary-setting authority does not permit disregard for municipal authority because the Commission prefers the pre-annexation status quo.

For the reasons that follow, Petitioners' Petition for Writ of Certiorari is **GRANTED**, and the Commission's decisions are **REVERSED AND REMANDED**.

## FACTUAL AND PROCEDURAL BACKGROUND[1]

The City is a municipal corporation of the State of Delaware, and Robbins Hose is the City's fire company.[2] The City's Charter provides that "[t]he Council shall have the power to adopt all measures requisite or appropriate for the protection against fire."[3] In furtherance of that authority, the City has adopted an ordinance recognizing Robbins Hose, a volunteer fire company, as its designated fire company.[4]

On June 3, 2024, the Commission received a letter from the City's then-solicitor, on behalf of the Dover Fire Department, informing the Commission of annexations by the City of real property within the fire districts of Cheswold, Camden-Wyoming, and Little Creek.[5] The letter explained that the involved companies had not reached a mutual agreement regarding fire district boundaries and requested that the Commission rule that future annexations would become part of Robbins Hose's fire district automatically.[6]

The Commission held a hearing on August 20, 2024.[7] At that hearing, the parties were encouraged to work toward a mutual resolution.[8] When the parties could not resolve the dispute, the Commission held another hearing on February 18, 2025.[9] The Commission heard the parties' arguments before voting to maintain the existing fire district boundaries.[10] In doing so, the Commission found that public

---

[1] Citations in the form of "D.I. ___" refer to docket items.
[2] Dover Code (hereinafter "Dover C.") §§ 1.04, 46-41.
[3] Dover C. (Charter) § 20.
[4] Dover C. § 46-41.
[5] Pet. for Writ of Cert. Ex. 1, Ex. 2 (D.I. 1). Exhibit 1 is the Commission's decision concerning Cheswold Fire Company, and Exhibit 2 is the Commission's decision concerning Camden-Wyoming Fire Company. The two decisions are nearly identical in substance and analysis.
[6] *Id.*
[7] *Id.*
[8] *Id.*
[9] *Id.*
[10] *Id.*

safety was not furthered by a boundary change.[11]  Petitioners sought reconsideration, and the Commission heard argument on March 18, 2025.[12]  On April 16, 2025, the Commission issued an Order declining to reconsider its decision.[13]

The Commission issued separate orders addressing, respectively, the Camden-Wyoming and Cheswold fire district boundaries.  In those orders, the Commission acknowledged the Superior Court's decisions in *City of Wilmington Fire Department v. State Fire Prevention Commission*[14] and *City of Dover v. State Fire Prevention Commission*,[15] but distinguished them based on the Commission's view that "the Court [in *Wilmington I* and *Dover*] acknowledged the City's opportunity to 'provide otherwise,' recognizing the ability of a city to utilize additional fire companies for the residents' services."[16]  The linchpin of the Commission's decision, however, was that public safety did not support a boundary change.[17]  The Commission also expressed concern regarding the City's use of surcharges to provide various services,[18] and the passage of time between the annexations at issue and Petitioners' request for relief, suggesting that fairness might

---

[11] Pet. Writ of Cert. Ex. 1, Ex. 2 (D.I. 1).

[12] *Id.*

[13] *Id.*

[14] 1999 WL 1223796 (Del. Super. Nov. 14, 1999) (hereinafter "*Wilmington I*").  The Court later granted reargument and re-entered the 1999 decision as modified.  *City of Wilmington Fire Dep't v. State Fire Prevention Comm'n*, 2000 WL 140790, at *1 (Del. Super. Feb. 3, 2000) (hereinafter "*Wilmington II*").  The 2000 decision did not alter *Wilmington I*'s central holding regarding the effect of municipal annexation on determining whether a municipality may select its own fire services. *Wilmington II* at *4.  As the Court explained on reargument, "[t]he Court's point remains, nevertheless, that when a 'home rule' municipality appears before the Commission in a case like this one, the Commission is not free to disregard the municipality's borders and treat the matter as if it concerns a mere boundary dispute or a simple disagreement between volunteer fire companies." *Id.*

[15] 2006 WL 2361707 (Del. Super. June 21, 2006).

[16] Pet. Writ of Cert. Ex. 1, Ex. 2 (D.I. 1).

[17] *Id.*

[18] *Id.*

4

weigh against permitting Robbins Hose to claim the disputed areas after the existing companies had provided service.[19]

Petitioners filed their Petition for Writ of Certiorari on May 13, 2025.[20] In it, Petitioners explained that the Commission's denial was legally incorrect and contrary to the holdings of the aforementioned Superior Court decisions addressing municipal fire protection authority.[21]

After the administrative record was filed, Petitioners filed their Opening Brief on January 30, 2026.[22] The Commission filed its Answering Brief on February 27, 2026,[23] in which both Cheswold Fire Company and Camden-Wyoming Fire Company joined.[24] Petitioners filed their Reply Brief on March 16, 2026.[25] The Court heard oral argument on April 14, 2026, and took the matter under advisement.[26]

## STANDARD OF REVIEW

A writ of certiorari is "the power of a superior court to call for examination of the record of an inferior tribunal," including an administrative agency or other quasi-judicial body.[27] The writ is appropriate when no other form of review, such as direct appeal by right, is available.[28] A petitioner seeking certiorari review must satisfy

---

[19] Pet. for Writ of Cert. Ex. 1 n.9, Ex. 2 n.10 (D.I. 1).
[20] D.I. 1.
[21] Pet. Writ of Cert. 3–7 (D.I. 1).
[22] D.I. 26.
[23] D.I. 27.
[24] D.I. 28. The Commission, Cheswold Fire Company, and Camden-Wyoming Fire Company, collectively, are hereinafter "Respondents."
[25] D.I. 29.
[26] *See* D.I. 32.
[27] *Middlecap Assoc., LLC v. Town of Middletown*, 2026 WL 253093, at *3 (Del. Super. Jan. 30, 2026) (citing 14 C.J.S. *Certiorari* § 1).
[28] *Id.* (citing *Delta Eta Corp. v. City of Newark*, 2023 WL 2982180, at *10 (Del. Ch. Feb. 2, 2023), and *In re Petition of Howell*, 2007 WL 1114123, at *1 (Del. 2007)). 16 *Del. C.* § 6611 provides that a party aggrieved by a decision of the Commission "made in the exercise of its appellate function under [16 *Del. C.* §§ 6609 and 6610] . . . may appeal the final order of the [Commission] to the Superior Court within 30 days of service . . . ." Section 6609 governs appeals to the

5

two threshold conditions: the challenged decision must be final, and there must be no other available basis for review.[29] Unlike a direct appeal, a common law writ of certiorari is not "a substitute for, or the functional equivalent of, an appeal."[30] Accordingly, the standard for reviewing a petition for writ of certiorari is "strictly limited."[31]

On certiorari, the Court may not weigh the evidence, review the lower tribunal's factual findings, or consider the case on its merits.[32] Rather, certiorari review is limited to errors that appear on the face of the record being considered.[33] The proper record for certiorari review is limited to the complaint initiating the proceeding, the answer or response, if required, and the docket entries.[34] The reviewing court determines, based on that limited record, whether the lower tribunal (i) exceeded its jurisdiction, (ii) proceeded illegally or manifestly contrary to law, or

---

Commission by persons aggrieved by orders or decisions of the State Fire Marshal, while Section 6610 authorizes the Commission, in resolving those appeals, to hear alleged errors, decide requests for special exceptions, interpretations, and special questions, and grant variances from strict compliance with the State Fire Prevention Regulations. *See* 16 *Del. C.* §§ 6609, 6610. Section 6607, by contrast, concerns the Commission's separate authority over other fire company matters, including questions regarding the delivery of adequate fire protection services and the resolution of boundary disputes. *See* 16 *Del. C.* § 6607. Given the exclusion of Section 6607 from Section 6611's express grant of appeal, decisions concerning boundary disputes are properly reviewable by the Superior Court upon writ of certiorari. *See* 16 *Del. C.* §§ 6607, 6611; *see also Millsboro Fire Co. v. State Fire Prevention Comm'n*, 2014 WL 5396158, at *2 (Del. Super. Oct. 21, 2014).

[29] *Rahim v. Justice of the Peace Court 13*, 2025 WL 722119, at *3 (Del. Super. Mar. 6, 2025) (citing *Maddrey v. Justice of the Peace Court 13*, 956 A.2d 1204, 1212 (Del. 2008)).

[30] *Black v. New Castle Cnty. Bd. of License*, 117 A.3d 1027, 1030 (Del. 2015) (citing *Maddrey*, 956 A.2d at 1213).

[31] *Id.* (citing *Matter of Butler*, 609 A.2d 1080, 1081 (Del. 1992)).

[32] *Id.* at 1030–31 (citations omitted).

[33] *Id.* at 1031 (citing *Maddrey*, 956 A.2d at 1215).

[34] *Id.* (citing *Maddrey*, 956 A.2d at 1216).

(iii) proceeded irregularly.[35] A defect falling within any of these categories constitutes reversible error.[36]

This case proceeds under common law certiorari. Common law certiorari differs from statutory certiorari in that it does not permit a higher standard of review authorized by statute.[37] Rather, common law certiorari confines the Court to the aforementioned questions of jurisdiction, legality, and irregularity on a limited record.[38]

## ANALYSIS

The issue at the core of this case is legal. Petitioners do not ask this Court to reweigh the Commission's factual findings. Instead, Petitioners contend that the Commission lacked legal authority to deny the requested boundary changes once the City annexed the relevant areas and designated Robbins Hose as its fire company to service those areas.[39] That issue is properly reviewed upon a writ of certiorari given that it concerns whether the Commission acted within its legal authority. In conducting that review, the Court limits its consideration to the Petition, the parties' briefing, and the docket.

The Court begins with the City's authority. The City Charter grants the City Council the power to adopt all measures requisite or appropriate for protection

---

[35] *Id.* (citing *Christiana Town Ctr., LLC v. New Castle Cnty.*, 856 A.2d 521 (TABLE), 2004 WL 2921830, at *2 (Del. Dec. 16, 2004)).

[36] *Rahim*, 2025 WL 722119, at *3 (citing *Christiana Town Ctr.*, 856 A.2d 521 (TABLE), 2004 WL 2921830, at *2).

[37] *See Diamond Port Prop. LLC v. City of Wilmington Zoning Bd. of Adjustment*, 2024 WL 5183693, at *2–3 (Del. Super. Dec. 20, 2024) (distinguishing common law certiorari from statutory certiorari where the relevant statutory scheme expanded the scope of what the Court could consider upon a writ of certiorari). Here, the Delaware fire prevention statutes do not provide a statutory certiorari route for review of the Commission's boundary decision. *See supra* note 28. The same is true of the Delaware Administrative Procedures Act ("APA"): although the APA permits substantial evidence review of covered agency case decisions, the Commission is not a covered agency for purposes of that review. *See* 29 *Del. C.* §§ 10142, 10161.

[38] *See Diamond Port Prop.*, 2024 WL 5183693, at *2 (citing *Black*, 117 A.3d at 1031).

[39] *See* Opening Br. 5–11 (D.I. 26).

against fire.[40] The City has properly exercised that authority by designating Robbins Hose as the fire company of the City.[41] Respondents do not identify any defect in the annexations at issue, nor do they identify any statute, charter provision, or ordinance that divests the City of authority to provide fire services within its boundaries.

Next, the Superior Court has previously addressed the issue at hand. Although those decisions do not bind this Court, it is persuaded by their reasoning.

In *Wilmington I*, the Commission denied the City of Wilmington's request to change and certify the city fire department's boundaries after annexation, thereby allowing another fire company to continue providing fire service in the annexed area.[42] The Court reversed.[43] It reasoned that the General Assembly had not authorized the Commission, rather than the city, to decide who would provide fire service within municipal limits, and had not authorized the Commission to disregard municipal boundaries, even for safety-related reasons.[44] Given the annexation, the area was "indisputably and indivisibly" within the city, and the Court found no legal basis to distinguish the city's municipal boundaries from its fire service area.[45] Thus, the Court held that, absent contrary action by the General Assembly or the city, the city's fire department would provide fire service within Wilmington.[46] The Court then reaffirmed its reasoning in *Wilmington II*.[47]

The Superior Court's later decision in *City of Dover v. State Fire Prevention Commission* reached a similar result.[48] There, as here, the City of Dover and

---

[40] Dover C. (Charter) § 20.
[41] *See* Dover C. § 46-41.
[42] 1999 WL 1223796, at *1 (Del. Super. Nov. 14, 1999).
[43] *Id*. at *3.
[44] *Id.* at *1–3.
[45] *Id.* at *2–3.
[46] *Id.* at *3.
[47] 2000 WL 140790, at *4.
[48] 2006 WL 2361707 (Del. Super. June 21, 2006).

Robbins Hose sought certiorari review of a Commission decision denying a request to move annexed property into Robbins Hose's fire district.[49] The property had previously been within Cheswold Fire Company's district, but it was undisputed that the property had become part of the City.[50] The Commission denied the request after finding, *inter alia*, that neither fire company was claimed to provide better service and that no public-safety concern justified changing the boundary.[51] The Court accepted the Commission's factual findings but held that the Commission committed legal error, reasoning that the City's charter power to adopt all measures requisite for protection against fire included the power to designate Robbins Hose as the fire company to provide fire protection services within the City's limits.[52] The Court also rejected the Commission's attempts to distinguish *Wilmington I* based on Robbins Hose's status as a volunteer fire company and Wilmington's status as a home rule municipality, and held that the Commission was required to approve Dover's request to place the annexed property within Robbins Hose's fire district.[53]

That reasoning urges the same result here. The Commission's statutory authority to set fire company boundaries and resolve disputes between fire companies does not authorize the Commission to disregard a municipality's valid exercise of authority over fire service within its own boundaries. The Commission may, of course, consider public safety when exercising the authority the General Assembly has granted it. That public-safety mandate, however, does not create

---

[49] *Id.* at *1–3.
[50] *Id.*
[51] *Id.* at *2–3.
[52] *Id.* at *3–5.
[53] *Id.* at *4–5.

power to override the City's legal authority to provide emergency services, including fire services, within its municipal limits.

The adequacy of the incumbent fire companies' service does not change the Court's analysis. The Commission found that Cheswold and Camden-Wyoming were providing adequate service and that moving the disputed areas into Robbins Hose's district would not further public safety.[54] That same line of reasoning was rejected in *Wilmington I*, *Wilmington II*, and *Dover*. The question is not whether the incumbent companies have served the areas well, or whether there are efficiencies favoring the incumbent companies on the margin, but whether the Commission may treat annexation as legally inconsequential so long as the existing providers better serve public safety. It may not.

Respondents point to the passage of time between certain annexations and Petitioners' request for boundary changes, suggesting that the City, by allowing the incumbent companies to provide services during that period, either consented to service by those companies or should be prevented from later seeking boundary alignment.[55] That argument fails. Respondents identify no statute, charter provision, ordinance, or controlling authority under which a municipality forfeits its authority to provide fire service within annexed municipal territory by waiting to request a boundary change.

The Court likewise does not accept Respondents' reliance on municipal budget concerns or utility surcharges as a basis to deny boundary alignment.[56] Those

---

[54] *See* Pet. for Writ of Cert. Ex. 1 and 2 (D.I. 1).
[55] *See* Answer Br. 8 (D.I. 27); *see also* Pet. for Writ of Cert. Ex. 1 n.9, Ex. 2 n.10 (D.I. 1).
[56] *See* Answer Br. 8 (D.I. 27); *see also* Pet. for Writ of Cert. Ex. 1, Ex. 2 (D.I. 1).

considerations do not establish that the Commission has authority to select a different fire service provider for property within Dover's municipal boundaries.

The Court's ruling is limited to the narrow record before it. Nothing in this ruling precludes the Commission from considering future disputes, provided it does so consistent with the legal principles articulated above.

## CONCLUSION

For the foregoing reasons, Petitioners' Petition for Writ of Certiorari is **GRANTED**. The decisions of the Commission are **REVERSED AND REMANDED** with instruction to the Commission to enter orders consistent with this opinion.

**IT IS SO ORDERED.**

_____
Noel Eason Primos, Judge

*Via File & ServeXpress*
oc:    Prothonotary
cc:    Counsel of Record

11